UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 21-CR-10190-ADB |
| FLORENCE MWENDE MUSAU, a/k/a "Precious Adams," a/k/a "Catherine Muthoki," a/k/a "Sarah James," | No. 21-MJ-06204-MPK |
| Defendant. | |

## **GOVERNMENT'S MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION**

The United States of America respectfully submits this memorandum in support of its motion for detention of Defendant Florence Mwende Musau pending sentencing pursuant to 18 U.S.C. § 3143.

Having pleaded guilty, the Defendant faces a demanding standard in seeking her release. The Defendant "shall" be detained pending sentencing unless she can prove by clear and convincing evidence that she is not likely to flee. *See* 18 U.S.C. § 3143(a). But she is a Kenyan citizen with no legal immigration status and no family in the United States. And in furtherance of a fraud conspiracy that caused victim losses of more than $1 million, the Defendant used three fake passports to open more than a dozen fraudulent bank accounts. For that crime, a potential Guidelines sentencing range of 51 to 63 months of incarceration awaits her at sentencing.

Facing a meaningful potential prison term and almost certain deportation thereafter, and with no ties to the United States and a history of using fake passports, the Defendant is a flight risk. After careful consideration of the Defendant's proposed conditions of release, the government respectfully submits that she has not met her burden to prove otherwise by clear and convincing evidence. Accordingly, her detention should continue pending sentencing.

## I.   **BACKGROUND**

### A.   **Defendant Background**

The Defendant is a 36-year-old Kenyan citizen who overstayed a short-term tourist visa. ECF No. 4-1 at ¶ 8 & n.2 (Affidavit of Special Agent Brendan Cullen in support of complaint and search warrants).  While she technically has a petition for adjustment of status pending with United States Citizenship and Immigration Services ("USCIS"), that petition is based on an admitted fraudulent marriage to a man who lives in Texas, where the Defendant has never resided.  *Id.*

The Defendant acknowledges that "she has minimal ties not just to the city of Boston, but the United States of America."  ECF No. 52 at 1.  She has no family here, and she cannot lawfully work here.  ECF No. 52-1 at ¶¶ 7, 10.  Conversely, her entire family lives in Kenya.

### B.   **Offense Background**

As detailed in the 134-paragraph complaint on which she was arrested and the information to which she pleaded guilty, from 2018 to 2020, the Defendant, with her co-defendant and boyfriend Mark Okuo, participated in a conspiracy and scheme to defraud victims of more than $1 million via online romance scams.  *See* ECF No. 4-1 at ¶¶ 9–106; ECF No. 44 at ¶¶ 8–26.  As part of that scheme, the Defendant used three aliases and fake passports to open bank accounts around Boston in order to collect and launder the proceeds of the fraud, and she then rapidly executed large cash withdrawals in structured amounts to evade detection.  ECF No. 44 at ¶¶ 1, 10, 14–26.

Those three fake passports—two from South Africa and one from the United Kingdom— were found in the Canton, Massachusetts apartment of Okuo and Musau during the execution of a search warrant.   The fraudulent passports appear authentic.   For example, they bear the Defendant's picture; they have holograms; and they contain fake visas and entry/exit stamps:





## C.   **Procedural Background**

The Defendant was arrested on a one-count complaint on March 25, 2021.  ECF No. 6. During the Defendant's initial appearance, the government moved for detention based on a serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A).  ECF No. 9.  The Defendant waived a preliminary hearing and assented to temporary detention pending the scheduling of a detention hearing.  *Id.*  Musau's co-defendant Okuo did the same.  ECF No. 10.

On April 9, 2021, the Court held a detention hearing for Okuo, and in advance of the hearing, the government filed a 16-page detention memorandum and 29 exhibits.  ECF Nos. 17,

18.  After oral argument, but before the Court could rule on the government's motion, Okuo filed

a motion for voluntary detention.  ECF No. 30.  In the wake of the government's detention motion

for Okuo and the hearing on that motion, Musau and the government jointly moved to continue

her detention hearing several times.  *See* ECF Nos. 20, 28, 36, 42.

On June 21, 2021, the Defendant pleaded guilty before Judge Burroughs, pursuant to a plea

agreement, to a one-count information charging her with conspiracy to commit bank fraud and

wire fraud in violation of 18 U.S.C. § 1349.  *See* ECF Nos. 44, 46, 49.  Pursuant to the plea

agreement, the parties agree that the Defendant's projected Guidelines sentencing range, barring a

departure, is 51 to 63 months of incarceration.  ECF No. 46 at 2.  The District Court accepted the

Defendant's guilty plea and scheduled sentencing for October 14, 2021.  ECF No. 49.  The

Defendant now seeks her release pending sentencing.

## II.   <u>LEGAL FRAMEWORK</u>

Under the Bail Reform Act, the Court "shall order that a person who has been found guilty

of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the

judicial officer finds by clear and convincing evidence that the person is not likely to flee . . . ."

18 U.S.C. § 3143(a).  "The 'clear and convincing' standard is demanding" and is only met "when

a party can place in the ultimate factfinder an abiding conviction that the truth of its factual

contentions are highly probable."  *United States v. Smith*, 964 F. Supp. 2d 167, 172 (D. Mass.

2013).

In evaluating the risk of flight pending sentencing, courts evaluate similar factors as they

do in the pre-trial context, including the defendant's immigration status, roots in the community,

and ties abroad.  *See* 18 U.S.C. § 3142(g).  For example, the First Circuit has considered a

defendant's lack of ties to the community, non-citizenship, and "virtually certain" deportation after

serving his sentence in affirming an order of detention pending sentencing.  *See United States v. Castiello*, 878 F.2d 554, 555 (1st Cir. 1989); *see also United States v. Valerio*, No. 07-10421-FDS, 2009 WL 2058851, at *1 (D. Mass. July 10, 2009) (ordering detention pending sentencing where "Defendant here is a citizen of Costa Rica who is in the United States illegally, and who is almost certain to be removed or deported after her prison term has concluded").

Courts also consider the nature of the offense, including a defendant's "history of obtaining false identification[s] and then committing criminal acts under those aliases" in denying release pending sentencing based on risk of flight.  *See United States v. Mateo Soto*, No. 16-10350-RGS, 2017 WL 5178781, at *2 (D. Mass. Nov. 8, 2017) (ordering detention despite the defendant's "family and business ties in Massachusetts").  For example, in *Valerio*, Judge Saylor ordered the defendant detained pending sentencing—even though her husband and three children were all U.S. citizens—due to her "history of using a false identity."  *Valerio*, 2009 WL 2058851, at *1.[1]

Finally, just as courts weigh the strength of the evidence in evaluating risk of flight in the pre-trial context, courts consider the potential sentence in the context of detention pending sentencing.  "Both the potential sentence to be imposed and the fact that a defendant faces deportation upon completion of that sentence are relevant factors in deciding whether the defendant poses a risk of flight."  *Id.*; *see also Castiello*, 878 F.2d at 556 (affirming order of

---

[1] First Circuit courts have also heavily considered the use of aliases and fraudulent identification documents in ordering detention in the pre-trial context.  *See, e.g.*, *United States v. Jones*, 201 F.3d 429, 1999 WL 668516, at *2 (1st Cir. 1999) ("The magistrate-judge's findings on [the defendant's] use of aliases also support the risk of flight determination."); *United States v. Femia*, 983 F.2d 1046, 1993 WL 5893, at *6 (1st Cir. 1993) (concluding with "little difficulty" that, among other things, "use of aliases amply supported" finding that the defendant posed a risk of flight); *United States v. Santana*, No. 09-10315-NG, 2010 WL 2427457, at *1 (D. Mass. June 10, 2010) (Gertner, J.) (denying motion to revoke detention order based on risk of flight and noting that defendant "had access to false identification documents" and helped another individual "acquire a false passport").

detention pending sentencing where "[t]he court indicated that in view of the potential sentence defendant faced and defendant's lack of United States citizenship, there was a strong inducement to flight."); *Mateo Soto*, 2017 WL 5178781, at *2 ("Defendant poses a significant flight risk, as he faces a substantial jail sentence and then near-certain deportation[.]").

## III.   <u>ANALYSIS</u>

For three independent reasons, the Defendant poses a significant risk of flight pending sentencing.  Further, her proposed conditions of release do not satisfy her "demanding" burden to prove, by clear and convincing evidence, that she is not a flight risk.  *See* 18 U.S.C. § 3143(a); *Smith*, 964 F. Supp. 2d at 172.

First, the Defendant has essentially no ties to the United States, and she has significant ties abroad.  *See Castiello*, 878 F.2d at 555 (affirming detention pending sentencing where non-citizen defendant had minimal U.S. ties).  She is a citizen of Kenya, where her entire family lives. Conversely, the Defendant has no family in the United States to serve as a custodian or even provide her with a place to live, and she cannot lawfully work in the United States if she were to be released.  *See United States v. Akula*, No. 19-30039-MGM, 2020 WL 3496693, at *2 (D. Mass. June 29, 2020) (ordering defendant detained based on risk of flight because "[a]t this time, he does not have a visa authorizing him to work in the United States[,] [i]f convicted, [he] would likely be subject to deportation after serving any period of incarceration, [and t]he court still lacks evidence that [he] has family ties in this district . . . or anywhere in this country, that equal or outweigh his ties to India").  Further, the Defendant faces all-but certain deportation upon the completion of her sentence.  *See Valerio*, 2009 WL 2058851, at *1 (detaining defendant pending sentencing "who is almost certain to be removed or deported after her prison term has concluded").  In short, the

Defendant's significant ties to Kenya, minimal ties to the United States, and looming deportation indicate that she has many reasons to flee and no reason to stay.

Second, the Defendant's use of aliases and fraudulent passports is concerning. *See Mateo Soto*, 2017 WL 5178781, at *2 (ordering detention pending sentencing based on defendant's "history of obtaining false identification and then committing criminal acts under those aliases"). The Defendant has demonstrated the ability to obtain and use seemingly authentic but fraudulent passports to commit fraud and evade law enforcement. This factor weighs heavily in favor of the Defendant's continued detention. *See Valerio*, 2009 WL 2058851, at *1 (finding that "history of using a false identity" outweighed the defendant's significant familial ties to Massachusetts).

Third, the Defendant has pleaded guilty and faces a meaningful potential term of incarceration at sentencing. Barring a departure or significant variance from the Guidelines range agreed upon in the plea agreement, she faces a prison term of years, and thus, the flight risk associated with releasing her for a matter of months pending sentencing is too great. *See Castiello*, 878 F.2d at 556 (significant "potential sentence" provided "strong inducement to flight"); *Mateo Soto*, 2017 WL 5178781, at *2 (detaining defendant pending sentencing because substantial potential sentence "pose[d] a significant flight risk").

Finally, the Defendant's proposed conditions of release pending her sentencing are not sufficient to satisfy her burden to prove by clear and convincing evidence that she will not flee. The government acknowledges the efforts of the Defendant's current and prior counsel in attempting to craft a set of conditions that will assure her appearance pending sentencing, and it has given significant consideration to her proposal. But she has not provided a reliable family member or friend to serve as a custodian, nor has she been able to provide any meaningful assets for a secured bond to assure her appearance. Essentially, the Defendant is asking to be released

on GPS monitoring to live in an apartment—with eviction proceedings pending—while she cannot work, in a country where she self-admittedly has "minimal ties."  But GPS monitoring is not a panacea to flight risk.  *See, e.g.*, *United States v. Newton*, 21-cr-10035-GAO-MPK, ECF No. 45 (ordering detention based on significant ties to Kenya: "[P]eople can cut off a bracelet and drive away. And I've had clients myself just cut off a bracelet and take off.").[2]  And the government has moved for—and this Court has ordered—detention in the *pre-trial* context for defendants who were able to present far more substantial assurances of appearance.  *See Newton*, 21-cr-10035-GAO-MPK, ECF No. 31 (ordering detention for pre-trial defendant with "extensive ties to Kenya" even though she was a naturalized U.S. citizen, had lived in the U.S. for three decades, had two children in the U.S., and offered a $750,000 bond secured by equity in four properties).

## IV.    <u>CONCLUSION</u>

The government respectfully submits that the Defendant, having pleaded guilty, has not satisfied her burden to demonstrate by clear convincing evidence that she is not likely to flee. Accordingly, the government requests that the Court enter an order of detention pending her sentencing.

---

[2] *See also United States v. Guerrero*, 17-10388-LTS (defendant released on electronic monitoring removed bracelet and was recently extradited from the Dominican Republic after fifteen months); *United States v. Letourneau*, 15-10156-DJC (defendant released on electronic monitoring with four third-party custodians removed bracelet and was fugitive for seventeen months before being apprehended in Colorado); *United States v. Albania Deleon*, 07-10277-NMG, ECF No. 110 (defendant fled between conviction and sentencing and was arrested in the Dominican Republic eighteen months later).

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:  */s/ Ian Stearns*
Ian Stearns
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, MA 02110
617-748-3208
Ian.Stearns@usdoj.gov

Date: June 28, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Ian Stearns*
Ian Stearns
Assistant United States Attorney

Date: June 28, 2021